# In the United States Court of Federal Claims

No. 16-261 C
No. 16-442 C
(**FILED UNDER SEAL** August 16, 2016)
**Reissued** August 30, 2016[1]

| | | |
|---|---|---|
| PRECISION ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Post-Award Bid Protest; Subject Matter Jurisdiction; Standing; Economic Interest; Substantial Chance. |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| ALPINE-FIRST PRESTON JV II LLC, | ) ) ) | |
| Intervenor. | ) | |

| | | |
|---|---|---|
| Q INTEGRATED COMPANIES, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| ALPINE-FIRST PRESTON JV II LLC, | ) ) ) | |
| Intervenor. | ) | |

*Sharon A. Roach*, Benton Potter & Murdock, P.C., Falls Church, VA, attorney of record for Precision Asset Management Corporation. *Janine S. Benton*, *Kathy C. Potter*, *John M. Murdock* and *Rosanne E. Stafiej,* of counsel.

---

[1] Reissued with redactions pursuant to parties' proposed redactions. *See* docs. 69-71.

*James C. Fontana*, Dempsey Fontana, PLLC, Tysons Corner, VA, attorney of record for Q Integrated Companies, LLC.  *David B. Dempsey* and *Jeffry R. Cook*, of counsel.

*Lauren S. Moore*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, attorney of record with whom appeared *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director and *Deborah A. Bynum*, Assistant Director, for defendant.  *Jonathan English*, Trial Attorney for the Department of Housing and Urban Development and *Christopher J. McClintock*, Trial Attorney for the Small Business Administration, of counsel.

*J. Alex Ward*, Morrison & Foerster LLP, Washington, DC, attorney of record for defendant-intervenor, Alpine-First Preston JV II LLC.

# OPINION

**Merow**, *Senior Judge*

On February 24, 2016, Precision Asset Management Corporation ("Precision") filed a bid protest challenging the Department of Housing and Urban Development's ("HUD") award of a property management contract to Alpine-First Preston JV II, LLC ("Alpine").  *See* Doc. 1.  Shortly thereafter, on April 7, 2016, Q Integrated Companies, LLC ("Q Integrated") filed a similar protest challenging the same award.  *See* Case No. 1:16-cv-442, Doc. 1.  Alpine has intervened in both cases.  At the request of the parties, and because the issues are sufficiently related, the court consolidated the two cases.  *See* Doc. 31.[2]

The government and Alpine have each filed a motion to dismiss the two complaints for lack of jurisdiction, claiming that neither Precision nor Q Integrated have the requisite standing to challenge HUD's award decision.  *See* Docs. 36, 37.  In addition, Precision and Alpine have each filed a motion to supplement the administrative record.  *See* Docs. 41, 47.

---

[2] All references will be made to the docket in Case No. 1:16-cv-261 unless otherwise noted.

## I.     BACKGROUND AND RELEVANT FACTS[3]

The Federal Housing Authority ("FHA"), which is part of HUD, "administers the single-family mortgage insurance program." *See* Doc. 36 at 9. When a homeowner defaults on an FHA-insured loan, many times, HUD ultimately acquires title to the property. *See id.* at 10. HUD outsources the management of these properties, contracting with various outfits for asset management services. Asset management includes services related to the marketing and sale of the properties HUD has acquired. *See id.*

### A.     The Solicitation

On July 25, 2014, HUD issued Solicitation No. DU204SA-13-R-0005 (the "solicitation"), requesting proposals for asset management services in twelve geographic areas. *See* AR at 44-1062.127 (original solicitation and subsequent modifications). The area at issue in this action, Area 3A, involves property in Illinois. *See* Doc. 36 at 9. Once the government received the requested proposals, the evaluation process involved two steps. First, HUD determined whether each proposal was technically acceptable, on a pass/fail basis. *See* AR at 1054.

Those proposals that were deemed technically acceptable, were then evaluated with the goal of determining which was the best value to HUD. *See id*. This analysis considered past performance and price, assigning approximately the same relative importance to each. *See id*. In order to determine the strength of a bidder's past performance, the technical evaluation panel ("TEP") analyzed the recency, relevancy, and quality of that performance, along with the panel's confidence in the bidder's ability to perform under the contract. *See* AR at 1057.

The TEP assigned each proposal one of five adjectival ratings for confidence and quality of past performance: excellent/high confidence, good/significant confidence, fair/some confidence, no confidence, and neutral/unknown confidence. *See* AR at 1060-1061. In coming to these determinations, the TEP was to evaluate the three most recent, relevant references provided by the bidder. *See* AR at 1047. In place of the three most recent, relevant references, a bidder was also permitted to

---

[3] The court recently evaluated, and ultimately granted, a motion to dismiss for lack of standing filed by the United States in a protest action that Precision brought relating to a different geographic area covered by the same solicitation. *See Precision Asset Management Corp. v. United States*, Case No. 1:15-cv-1495, Doc. 35 (sealed opinion). The court repeats much of the background here for ease of reference.

request that the TEP consider efforts with which certain key personnel had been involved. *See* AR at 1049.

### B.   Precision's Proposal

Precision submitted its initial proposal for all twelve geographic areas on September 23, 2014. *See* AR at 2071-2340. For Area 3A, the only area at issue in this protest, Precision proposed a cost of $[…]. *See* AR 2329. The initial proposal included six contract references based on which HUD was to make its past performance evaluation. *See* AR at 2266-2277.

By letter, dated August 27, 2015, HUD notified Precision that it had established a competitive range and was initiating discussions. *See* AR at 3757. The letter also stated that the TEP found plaintiff's proposal to be "Technically Acceptable." *See id.* In an attachment enclosed with the letter, HUD noted that it had identified "[n]o weaknesses or deficiencies" in Precision's proposal, and that it had "[n]o adverse past performance information." AR at 3719. The only substantive note on the attachment was that while plaintiff's price was "deemed reasonable," it was "either the highest or higher than the overall mean," when compared to other proposals. *Id.*

HUD revised the solicitation several times, and plaintiff submitted its revised proposal on September 9, 2015. *See* AR at 3854-3885. Its revised proposal included "updated Past Performance Information and revised pricing." Doc. 1 at 9. In its revised proposal, Precision identified three past performance efforts for evaluation: XXXXXXXXXX XXXXXX XXXXXX XXXXXX. *See* AR at 3854-62. In its evaluation, the TEP looked at the XXXXXXX XXXXX XXXX XXXX efforts, but instead of considering the XXXXXXXX, it considered the XXXXXXXXXX, one of the references identified in Precision's initial proposal. *See* AR at 4101. After conducting its past performance evaluation, HUD assigned plaintiff's proposal a "Neutral/Unknown Confidence" rating. *See* AR at 4277. Precision's final proposed cost was $[…]. *See* AR at 4296.

### C.   Q Integrated's Proposal

As Precision did, Q Integrated submitted its initial proposal for Area 3A on September 23, 2014. *See* AR at 1367-1678. In the proposal, Q Integrated stated that it would perform the contract in partnership with XXXXXXXXXXXXX XXXXXX XXXXXX. *See* AR at 1389-1409. Specifically, Q Integrated proposed that

XXXXXXXXX would serve as its sub-contractor and would perform a maximum of 49 percent of the contract work.  *See* AR at 1389, 1399.

For its past performance evaluation, Q Integrated submitted a list of its own clients and XXXXXXXclients, along with identifying three specific efforts for the TEP to review.  All three efforts were projects on which Q Integrated served as a subcontractor to XXXXXX, performing 20 percent of the work on the prime contracts.  *See* AR at 1656-61.

HUD notified Q Integrated that it had established a competitive range and was initiating discussions by letter dated August 27, 2015.  *See*  AR at 3739.  The letter stated that the TEP found Q Integrated's proposal to be "Technically Acceptable."  *See id.*  On the attachment included with the letter, the TEP noted "[n]o adverse past performance information," and that Q Integrated's price was "lower than the overall mean."  *See* AR at 3711.

Q Integrated submitted a revised proposal in which it omitted the reference to having performed 20 percent of the work under XXXXXXX on the specified past efforts, and instead stated that "QINTCO Key personnel processed 100% of the volume" for each of the referenced contracts.  *See* AR at 3808, 3810, 3812.  The TEP took issue with the discrepancy, and downgraded Q Integrated's confidence rating as a result.  *See* AR at 4006.

### D.   The Award and Plaintiffs' Challenges

The record lists the entities deemed technically acceptable, and in the competitive range, as follows:

| Company | Total Value of Contract | Confidence Rating |
|---|---|---|
| XXXX XXXXXXXXXXXXXX | $[…] | Neutral/Unknown Confidence |
| XXXXXXXXXX XXXXXXXX | $[...] | Neutral/Unknown Confidence |
| XXXXXXX | $[...] | Excellent/High Confidence |
| Precision Asset Management | $[…] | Neutral/Unknown Confidence |
| Alpine-First Preston JV II | $[…] | Excellent/High Confidence |

| XXXXXXXXXX XXXXXXX | $[…] | Neutral/Unknown Confidence |
| --- | --- | --- |
| Q Integrated Companies, LLC | $[…] | Fair/Some Confidence |
| XXXXXXXXXXX | $[…] | Neutral/Unknown Confidence |

*See* Doc. 36 at 24-25 (citing AR at 4277).

The TEP recommended that HUD award the contract for Area 3A to XXXXX XXXXXXXX (XXXXXXX), explaining that "[w]hile Alpine-First Preston, JV II was ranked higher than XXXXXX XXXXXXX among those proposals with 'Excellent/High Confidence', this panel did not see a benefit to the government in selecting a slightly higher past performance for a higher price." *See* AR at 4256-57. Contrary to this recommendation, the Source Selection Authority decided to award the contract to Alpine. In his decision letter, he stated:

> I determine that making award to the best overall offeror in terms of past performance outweighs the minimal difference in price, especially when taking into account the real property value of the portfolio they will be administering and potential disastrous costs to the public and the Government if failure were to occur. It is essential that we award the contract to the offeror who will provide the best confidence of likely success, given the relatively small difference in prices.

AR at 4279-80.

In its complaint, Precision now claims that HUD's award decision was arbitrary and capricious because HUD "failed to follow its own evaluation criteria and process," failed "to evaluate Precision's past/performance references," and assigned Precision "an inapplicable rating." *See* Doc. 1 at 16. Precision also claims that HUD violated its duty to engage in meaningful discussions pursuant to 48 C.F.R. § 15.306(d). *See id.*

Similarly, Q Integrated's complaint alleges:

> (a) HUD's failure to properly evaluate QINTCO's proposal under the Past/Present Performance factor, (b) HUD's irrational treatment of QINTCO's past performance garnered as a subcontractor as *per se* less relevant than experience derived as a prime contractor, (c) HUD's

6

> failure to properly evaluate QINTCO's past performance questionnaires and (d) HUD's failure to evaluate the past performance of <u>both</u> members of the Alpine joint venture, particularly Alpine Companies.

Case No. 1:16-cv-442, Doc. 1 at 14.  Additionally, Q Integrated makes the same allegation as Precision with regard to a lack of meaningful discussions in violation of 48 C.F.R. § 15.306(d).  *See id.* at 16.

Before evaluating the substantive claims leveled against HUD by Precision and Q Integrated, the court must determine whether each plaintiff has standing to bring its case. *See Myers Investigative & Sec. Servs. v. United States,* 275 F.3d 1366, 1369 (Fed. Cir. 2002) (noting that "standing is a threshold jurisdictional issue").

## II.   MOTIONS TO DISMISS

The government and Alpine have each filed a motion to dismiss, alleging that this court lacks subject matter jurisdiction to consider plaintiffs' cases on the basis that neither plaintiff has the requisite standing.  *See* Docs. 36, 37.  Because the motions make essentially the same arguments, the court will consider them together. Plaintiffs bear the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. *See Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).  In determining whether the court has jurisdiction over a plaintiff's claims, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)).

This court's jurisdiction is based on the Tucker Act, which states in relevant part, that the Court of Federal Claims:

> shall have jurisdiction to render judgment on any action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

Under this section, a plaintiff must demonstrate that it is an "interested party," in order to establish this court's jurisdiction. As the Federal Circuit has held, the "interested party" requirement in the Tucker Act "imposes more stringent standing requirements than Article III." *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *See id.* (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).

There is no dispute that both Precision and Q Integrated are actual bidders. *See* Doc. 36 at 30, 33. But the plaintiffs must also demonstrate sufficient economic interest to support standing. A plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

The government and Alpine assert that neither Precision nor Q Integrated can demonstrate a substantial chance of receiving the award but for the various alleged errors in the procurement process. For the reasons that follow, the court disagrees.

**A. Precision has standing**

Precision alleges a number of errors in HUD's past performance evaluation process, including consideration of improper references and inadequate discussions of deficiencies. *See* Doc. 1 at 15-16. HUD considered the XXXXXX effort, the XXXXXX effort, and the XXXXX effort, but did not evaluate the XXXX effort, which was submitted specifically in support of Precision's proposal for Area 3A. *See* Doc. 1 at 11-12. Precision also argues that HUD violated its obligation under the terms of the solicitation to consider other references if any of the initially evaluated efforts were found to be "not relevant." *See* Doc. 1 at 14. Additionally, Precision alleges that HUD violated its obligation to engage in meaningful discussions by failing to notify Precision of several deficiencies in its proposal related to evaluation of its past performance efforts. *See* Doc. 1 at 16. As noted above, HUD ultimately determined that it had "Neutral/Unknown Confidence" in Precision's ability to perform the contract. Precision states that had the alleged errors not been committed, "it would have received a higher, if not the highest, confidence rating." *See id.* at 17.

8

The government and Alpine deny this assertion, explaining that even if HUD had considered the XXXXXX effort in place of the XXXXXXX, Precision's proposal would not have warranted the "Excellent/High Confidence" rating assigned to both the Alpine and XXX proposals.  *See* Doc. 36 at 31-32; Doc. 37 at 7-8.  Alpine also takes issue with the other alleged deficiencies, arguing that Precision would not have received the award even if HUD had substituted a new reference in place of the reference it concluded was "not relevant," and that HUD was not obligated to engage in discussions with Precision.  *See* Doc. 37 at 9-10.  Both parties emphasize that even assuming Precision's confidence ratings were incorrect, its price was still higher than XXXXXXX, which would defeat Precision's claim of standing.  *See* Doc. 36 at 33; Doc. 37 at 9.

In support of this conclusion, the government quotes back to the court a portion of its recent decision dismissing Precision's protest of the award in Area 5A for lack of standing.  The court's conclusion in that case was based, in part, on its finding that Precision "made no argument and presented no facts to demonstrate that it offered something better or different from XXXXXXXXX that might justify selection of the higher priced proposal, even assuming that the two companies had the same past performance/quality rating."  *Precision Asset Management Corp. v. United States*, Case No. 1:15-cv-1495, Doc. 35 at 9.

As the court also noted in its previous opinion, the substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors. *See Sci. & Mgmt. Res., Inc. v. United States*, 117 Fed. Cl. 54, 62 (2014); *see also Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract."). Demonstrating prejudice does require, however, that the plaintiff show more than a bare possibility of receiving the award.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005) (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

In *Information Technologies*, for example, the Federal Circuit found that the plaintiff had established a "substantial chance" of receiving the contract at issue because the record supported the conclusion that had the alleged errors been cured, "[t]here is no question . . . its proposal would have been improved and its chances of securing the contract increased."  *Info. Tech.*, 316 F.3d at 1319.

9

Assuming that Precision was assigned the highest confidence rating, a revised chart of the competitive range would appear as follows:

| Company | Total Value of Contract | Confidence Rating |
|---|---|---|
| XXXXXXXXXX XXXXX | $[…] | Neutral/Unknown Confidence |
| XXXXXX XXXXXX | $[…] | Neutral/Unknown Confidence |
| XXXXX | $[…] | Excellent/High Confidence |
| Precision Asset Management | $[…] | **Excellent/High Confidence** |
| Alpine-First Preston JV II | $[…] | Excellent/High Confidence |
| XXXXX XXXXXX | $[…] | Neutral/Unknown Confidence |
| Q Integrated Companies, LLC | $[…] | Fair/Some Confidence |
| XXXXX XXXXXX | $[…] | Neutral/Unknown Confidence |

In the previous protest, the court found that Precision lacked standing because the record did not demonstrate a substantial chance that HUD would award the contract to a bidder with a higher price, even given the same excellent confidence ratings. Here, however, the government's actual award decision supplies that evidence—the Source Selection Authority chose to award the contract to Alpine, despite the fact that XXXXXXXX had received the same confidence rating and offered a lower price.

Taking Precision's factual allegations as true, as the court must in evaluating a motion to dismiss, HUD committed significant errors in assigning Precision's confidence rating. Though a close evaluation of the substance of these claims may lead the court to conclude that Precision is not entitled to relief on the merits in this case, the court finds that Precision has standing because, absent the alleged errors, its "proposal would have been improved and its chances of securing the contract increased." *Id.*

### B.     Q Integrated has standing

As noted above, Q Integrated has also alleged various errors in HUD's evaluation process, with regard to both its proposal and Alpine's proposal. Specifically, it alleges:

> (a) HUD's failure to properly evaluate QINTCO's proposal under the Past/Present Performance factor, (b) HUD's irrational treatment of QINTCO's past performance garnered as a subcontractor as *per se* less relevant than experience derived as a prime contractor, (c) HUD's failure to properly evaluate QINTCO's past performance questionnaires and (d) HUD's failure to evaluate the past performance of <u>both</u> members of the Alpine joint venture, particularly Alpine Companies.

Case No. 1:16-cv-442, Doc. 1 at 14.  Q Integrated makes the same allegation as Precision with regard to a lack of meaningful discussions in violation of 48 C.F.R. § 15.306(d).  *See id.* at 16.

The government and Alpine both disagree with Q Integrated's conclusion that its past performance evaluation was defective, and object to the suggestion that, if corrected, the evaluation could have garnered the highest confidence rating to present realistic competition to Alpine or XXXXXX.  *See* Doc. 36 at 34; Doc. 37 at 11-12.  As with their evaluation of Precision's claims, both the government and Alpine rely on the reasoning that XXXXXX price was lower as a means of dispatching any remaining basis for standing that Q Integrated has.  *See* Doc. 36 at 38; Doc. 37 at 12.

The court is not insensitive to the fact that Q Integrated's claim of standing is somewhat more tenuous than Precision's given that it is contending with both Alpine and XXXXXXX for its place in line to receive the award.  If, however, Q Integrated's allegations are accepted as true, and reasonable inferences drawn in its favor—that it's evaluation was improperly low and Alpine's was improperly high—a review of the revised competitive range chart has much the same effect as it did with regard to  Precision:

| Company | Total Value of Contract | Confidence Rating |
|---|---|---|
| XXXXXXXXXXX XXXXXXXXXXX | $[…] | Neutral/Unknown Confidence |
| XXXXXXXXXXX XXXXXXXXXXX | $[…] | Neutral/Unknown Confidence |
| XXXXXXXXXXX | $[…] | Excellent/High Confidence |
| Precision Asset Management | $[…] | Neutral/Unknown Confidence |
| Alpine-First Preston JV II | $[…] | **Good/Significant Confidence** |
| XXXXXXXXX XXXXXXXXX | $[…] | Neutral/Unknown Confidence |
| Q Integrated Companies, LLC | $[…] | **Excellent/High Confidence** |
| XXXXXXXXXXXX XXXXXXXXXX | $[…] | Neutral/Unknown Confidence |

In order to establish standing, Q Integrated is not required to show that it would receive the award but for HUD's alleged errors. *See Sci. & Mgmt. Res., Inc. v. United States*, 117 Fed. Cl. 54, 62 (2014); *see also Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.").

As noted with regard to Precision, particularly considering the government's demonstrated willingness to award the contract for Area 3A to a bidder who has not offered the lowest price, Q Integrated has established that it has a substantial chance of receiving the award because if HUD's alleged errors are corrected "[t]here is no question . . . its proposal would have been improved and its chances of securing the contract increased." *Info. Tech.*, 316 F.3d at 1319.

The court, therefore, **DENIES** both the government's motion to dismiss, *see* Doc. 36, and Alpine's motion to dismiss, *see* Doc. 37.

### III.   MOTIONS TO SUPPLEMENT THE RECORD

In addition to the motions to dismiss, the court has considered the two pending motions to supplement the record filed by Precision, *see* Doc. 41, and Alpine, *see*

Doc. 47. As a general rule, "[t]he scope of review of the agency's actions is limited to the administrative record developed by the agency." *Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 605, 615 (2000), *aff'd,* 275 F.3d 1366 (Fed. Cir. 2002) (citing *Camp v. Pitts,* 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). Supplementation of the record may be appropriate, however, where "required for meaningful judicial review." *Impresa Construzioni Geom. Domenic Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

Shortly after the government and Alpine filed the motions to dismiss, Precision filed a motion to supplement the record with three categories of documents:

> 1. The "Response to the Size of Appeal of Alpine-First Preston JV II" (hereinafter the "SBA Response") that was filed with the SBA Office of Hearings and Appeals ("OHA"), Docket No. SIZ-2016-03-22-23, on April 14, 2016, by the Small Business Administration ("SBA"), and
>
> 2. The late revisions to the Initial and Revised Proposal of Alpine-First Preston ("Alpine"), and
>
> 3. Any and all explanations and justifications relied upon by HUD in accepting late revisions to Alpine's Initial and Revised Proposals.

*See* Doc. 41 at 1-2. In response to this motion to supplement, the government points to a declaration, executed by the contracting officer, in which she states that she confirms, after searching her files, emails and the contract files, that "no such documents were received." *See* Doc. 45 at 32.

The fact that the contracting officer never received these documents explains why they were omitted from the administrative record filed with the court. Because the court did not find the documents necessary for a review of the issues raised in the motions to dismiss, the court hereby **DENIES** Precision's motion to supplement. If, however, Precision believes these documents are relevant to an issue before the court at a later date, it may reassert its motion.

In its motion to supplement, Alpine requests that the court consider additional documents relating to post-award SBA proceedings "if the Court decides to consider the plaintiffs' size-related arguments, or to supplement the Administrative Record

13

with documents relevant to those arguments." *See* Doc. 47 at 2.  Because the court has denied Precision's motion to supplement, Alpine's motion is **DENIED** as moot.

## IV.   CONCLUSION

The court **DENIES** both the government's motion to dismiss, *see* Doc. 36, and Alpine's motion to dismiss, *see* Doc. 37.  In addition, the court **DENIES** both Precision's motion to supplement the administrative record, *see* Doc. 41, and Alpine's motion to supplement the administrative record, *see* Doc. 47, with leave to refile should the documents become relevant at a later point in the proceedings.

The parties are further ordered to confer as to a time that all are available for a status conference to discuss how this case should proceed.  One party, acting as a representative for all four parties, shall file a notice of availability with the court no later than Tuesday, August 23, 2016.

**SO ORDERED.**

s/ James F. Merow
James F. Merow,
Senior Judge